All right. In a former day, I would say this was a graveyard shift, but I don't necessarily want that on Bloomberg. But anyway, welcome to the afternoon panel. We have a full array, and we have five panels sitting this week. And so I'm honored to sit with Judge Clement from New Orleans, Judge Wilson from Mississippi. So we have a circuit covered with these cases. Now, we have read these. This first case was an expedited appeals, put on the docket. We've read the record, read what happened below, read your latest filings to us, et cetera. So my only point is when you get up, you don't need to tell us the history of Angola or that kind of thing. But cut to it. The other thing, as we pointed out, we know that there were interrelated other cases, and you've done well to tell us how they slice, that they don't move this out, and so on and so forth. But granted all arguments, so we have a real-time sense where the case is. It's August 4th, summer and like that. I'm not saying abandon what you've read, but we've read it. So we're here to really get a good real-time understanding of where things are on the ground in a district court,  If there's any impact from the other cases, you can tell us. But from what we understand, those are kind of in their own axis that work. All right, that said, we'll call the first case, 25S30322. Voice of experience, person of the law, Mr. Aquinone. Yes, sir. Thank you, Judge Stewart, Benjamin Aguinalda, on behalf of the state defendants. May it please the court. This case begins and ends with the district court's failure to comply with the PLRA. Judge Clement, I don't think your opinion for the court in Hines County could have been clearer. In order for a district court to enter injunctive relief consistent with the PLRA, the district court must actually make the findings required by 3626A. Now, you know, Oregon, what some cases say, a talismanic language. He needs to cite the chapter first, the subparagraph, the semicolon, et cetera, et cetera. Goloskis, not necessarily in this arena, but where it's held, you know. Maybe it's better if a judge says, I'm at paragraph two, not being facetious, but you understand what I'm saying. I don't think you're wholly making kind of a magic language, talismanic. Your argument is it's not just that, right? It's more than that in terms of the noncompliance. Is that the way I understand your argument? That's correct, Judge Stewart. And I'm glad you asked that, because I think Hines County answers that question. If you look in the court's opinion at pages 638 to 39, that's where the court explains the two district court orders that it had before it. Remember, the first order that this court had before it was October, October 2022. That was ECF 215 in the Hines County District Court. That order said nothing about 3626A. The second order this court had was the district court's order. It was ECF 238 in that district court docket. That was a December order. The very last paragraph in that order was the district court's conclusion that said, the Fifth Circuit hasn't told me whether I need to say magic words to satisfy the PLRA. But if I do, here are my magic words. And the district court quoted the 3626A findings requirement. This court heard arguments from the United States and Hines County that said, well, that should be enough. If you look sideways, squint a little bit, the district court was basically tracking the findings. It didn't say that. But that should be enough. This court rejected that. At page 639 of this court's opinion in Hines County, it said, one, the statement can't be conclusory. The findings can't be conclusory. And two, the findings have to have the necessary explanation and justification required by the PLRA. But what exactly is missing here, other than the incantation of the section's requirements? I mean, in other words, if the district court did it substantively, does that distinguish it from Hines County and what the orders were like there? No, Your Honor, because if you look at the United States brief in Hines County at pages 78 and 79, you saw the same argument my friends on the other side are making, which is, just look at the substance, do the analysis yourself, we reach the same result. This court rejected that. The reason it rejected it, and I think the answer to your question, I think the best way to look at this is to come at it from the opposite direction, which is to say, we know what's not enough. We know that not saying anything about 3626A is not enough. That's the uptick. You know, this is not an esoteric abstraction. I mean, it's a case about it being very hot, 88, 101 degrees, whatever. It's not hard to understand the facts, the tension between the state and the appellants. I mean, it's not one that's really hard to. Some of the cases we have are really difficult to understand what's going on. It really is. But this is one of those cases where nobody disagrees. Here's the factual scenario, right? It's about the prisoners, the heat, et cetera, et cetera. But what I'm driving is that, to the point Judge Wilson said, I mean, I know what you're citing. Every lawyer who gets up and cites a case, right? That says it. But it does still seem like, of course, whether I agree with the merits of what the judge did, that you are kind of wanting us to just say, if you don't emblazon exactly the statute, the words, whatever you have to sentence, that somehow, I don't think that's what Hines said. Are you over-reading? Are you over-arguing what Hines said, is just my question. No, Your Honor. And a couple of responses to that. One is, I think even if you thought that what I was asking you to do is just pure formalism, it's esoteric, I think that's what note eight of the Eleventh Circuit's Hoffer decision comes into play. Because what that court recognized is, the whole point of the PLRA is to curb district court's equitable discretion. One way it does it is enforcing district courts to go through a procedural process. There are wholly, aside from the substance, the procedural requirements here are you have to actually make findings. And you have to satisfy a reviewing court that you've not only made those findings, but in the words of this court in Hines County, you've provided a necessary explanation. Not to you personally, but to your client. I mean, you weren't left in doubt about what the judge ruled. Right? Your Honor, the question for me is. At the heart of it, don't we get to clarity? You know, the ruling. I mean, certainly you have a situation where the judge is, you know, just all over. You don't know what they decided, did they hit it or not. You need to be very close to the statute. On the other hand, OK, taking your argument as merits, I'm not dismissing it at all. But PLRA, Carrera, AEDPA, they were all enacted, I think, in 96 on the same time. They had the same push in terms of curbing. They all have their purposes, et cetera. It's statutory. You read it, et cetera, et cetera. And they've had, you know, those particular purposes. But it's a long time since then. And so the reasons why courts have said what they said in Hines. But in this case, the state and both sides knew what the judge ruled. I don't think you're making your argument. And I'm not putting it back. But that's why we have a little argument. I'm just like, it's not in doubt whether you agree with it or not and what you say to us is incorrect. You know, it's a matter of law, whatever. That's an argument. But, you know, whether it's clear, whether it's under the PLRA, gotcha, you know, non-compliance, you don't say the words, you're not arguing a gotcha, you know what I'm saying? I'm just teasing out. We had the merits here. Assuming argument, though, we say, OK, it's like baseball, the old neighborhood play. Shortstop could get his foot near the base but didn't have to put it down because he gets spiked on by the runner. So called out. So not that we're saying close. We're in a textual analysis. We know what the statute says. I'm not suggesting non-compliance with the statute. What I'm saying, assuming if we were to read to say, OK, Heinz says what it says. PLRA says what it says. Although reading it holistically in this record, we deem that the district court sufficiently, yeah, yeah, yeah, yeah. Then we add, OK, next level in terms of whether that was correct or not. Do you follow me? I do, Judge Stewart. And with all due respect, if the court says that, then it is directly contrary to Heinz County. Because you could have said the exact same things about the district court receivership order in Heinz County. This court knew exactly what the receivership order said and did. This court's question was, did the district court actually go through the procedural hoops to justify under the PLRA and make the findings? There was another panel, another case. I mean, I understand it's on the books, but all these cases are dynamic and different. That's why it's not King's Act just cited. You're making a very forceful argument about his compliance. But if it was as simple as just reading Heinz, we wouldn't have read all the verdicts. We'd just say, OK, take it out of the oral argument docket. We'll decide it, say, see Heinz. I mean, knowing it was here, you should know that argument didn't have traction from that summit. Anyway, I interrupted Judge Wilson. He had a better question coming anyway. Well, it's certainly not a better question, but it does build on this. And I'm just wondering, what is the impact of the fact that this is not the first TRO? This is not the first order the district court's entered. Do we consider the findings beforehand and all that? Because surely this order grows out of the prior litigation or the prior rulings by the district court, which are also more fulsome. Do we consider that? Does that make a difference? So it doesn't. It does not make a difference, Judge Wilson. So every time the district court's, I'm sorry. Just because of the district court's own words in which the district court said, I didn't address any of this in the first go around. Well, I get that. I get that. But what it does do, the prior order, I guess to my second order, what it does do is frame up what the dispute's all about. And so what the district court does now is hone in on the state's decision to raise the threshold by three degrees. And I mean, it doesn't seem like we're starting from ground zero. I mean, what I was going to ask was, does the district court then need to go through the incantation from the PLRA every order it enters after the first one, or what? Yes, Your Honor. I mean, this court's decision in Hines County at 637 and 38 says the requirements apply for any entry of prospective relief. And I think what I would say in response to Your Honor's question about what water is there under the bridge, at this point, when the district court says, this is the first time I'm addressing these issues, the district court has the corresponding responsibility to say, and by the way, I acknowledge the 3626A finding requirements. Here's what the findings are. And I do think Judge Wilson, Hines County provides a good answer to your question. Because remember, in that case, that was a very, very longstanding case. You already had a consent decree, prospective relief, on the books. This court was well aware of all that water under the bridge. And yet, when the district court went to enter new prospective relief, that is the receivership, this court said, you've got to satisfy the 3626A finding requirements. All right, a couple preliminary questions maybe we should have asked first. Do you agree that this court has jurisdiction over this TRO? Yes, Your Honor. Since the beginning, our position has always been that the TRO was, in effect, a preliminary injunction. And as I understand, my friends on the other side, they backed away from any objection based on the district court's characterization of the order as a TRO. Of course, in the ordinary case, the TRO is not appealable. But the district court said, no, this is a straight 90-day injunction of the PLRA. And I guess our court's prior finding that the July 2nd order was, in effect, a preliminary injunction, or maybe it was a preliminary injunction, I can't recall. Does that feed into that analysis at all? It does. Our opening brief jurisdictional statement quotes from this court's first order in July that says, the first time the district court did this, we're going to construe it as a preliminary injunction, because it is a preliminary injunction. So a question on the back end. What about mootness? Doesn't this thing run the 21st of August? That's correct, Judge Wilson. I'm glad you asked, because I want to address the Smith v. Edwards issue that's looming here. So yes, the injunction right now, absent further action by the district court, expires on August 21st. As you know from the letter from plaintiffs last week, they had moved the district court to enter a successive preliminary injunction that is basically the same injunction a second time. And we owe the district court an opposition brief at the end of this week. We'll file a letter with the court, sharing our brief that we file in the district court, so that the court is aware of our position. I'll tell you, just to preview, at the end of the day, if the court enters a successive preliminary injunction, that is unlawful five times to Sunday. If you want to know why, just listen to the first oral argument in this case, vote one, the vote one argument. Judge Oldham tees up the problem at minute 19. And the problem, basically, is that the PLRA bars successive injunctions, like what plaintiffs are requesting here. And so, I'm not going to hide the ball. If the court does enter, the district court does enter a successive injunction like that. Well, if that's the case, why have you taken so long to file your opposition? Well, we stipulated, Your Honor, with plaintiffs to the briefing schedule on the district court. Well, I understand that. You've got the ace of spades in your hand. Why are you waiting until all the cards play out? Well. If you take my point. I mean, how do I make it lighter for you? I'm saying, you're adhering to the briefing schedule. But you're saying, I've got the ace over here in my hand. But I'm going to wait until the end of the game before I play it. You know, if that's wrong, as a matter of law, doesn't that answer? You follow me? So, Your Honor, I hope it's the ace of spades. And the reason we're not waiting for very long. Well, the reason why I'm saying it is because we have all this overlapping litigation. We have that case for Judge Oldham. Then we have this one and like that. My serious point is this. We're having all these pending things now. We're waiting on the opinion from Judge Oldham's panel. Even though we say it's unrelated, we're teed up today. Then there's potentially, you see what I'm saying? That they're unrelated. But on the other hand, context-wise, they are related. So we sit back and wait. OK, we know something's going to happen in the district court. So we're not going to issue here. Because we're going to wait to see what happens there. You see what I mean? We're going to wait. And that's what I'm saying from a process-wise, in three or two different panels. They're looking to see what we're doing, et cetera. That's what I meant by we're trying to get real-time understanding of where the facts on the ground, you see what I'm saying, are the same. But if that cuts it off from that happening, isn't that better from the standpoint of the panel knowing what's happening and not going to happen to know whether we have found it? Absolutely, Judge Stewart. And if I can, just make two brief points on my time remaining. The first is on the timing. Ma'am, court, I interrupted him. Give him two minutes extra. Well, thank you, Judge. I took a minute for the question, so I'm sorry. Thank you, Judge Stewart. Two brief points. One is on the timing. This is not us dragging our feet. The plaintiffs started the schedule by filing their motion for a successive injunction on July 28th. It was just a few days ago. So that's not on us, Judge Stewart. And I just want to make clear, we would never try to jam this court. And I apologize if that impression is on us. No, no, no, I didn't take it that way at all. And just to go back to Judge Wilson's question, so what would be the net effect of the district court entering a successive preliminary injunction? Our position, of course, is that has no legal effect. And so if we're right, then this case would become moot on August 21st, right? Because there's no second injunction that can come in on the back end and keep this dispute alive. And in the absence of a district court's ruling by the 21st. It will become moot. It's moot. That's exactly right. In other words, if we view this order in isolation from what's going on in the district court, it moots on the 21st. That's exactly right, Judge Wilson. And I'll tell you again, not to hide the ball, if the district court enters a successive preliminary injunction, which we will vehemently oppose, we will file a notice of appeal. I guess another way maybe to pin this down a little bit is, it's got a lengthening and complicated procedural history. But there's the July 2nd order from last summer. And in between the July 2nd order and the order that is under review in our panel, the state changed the time frame for monitoring the heat index as well as the threshold for a heat alert from 88 to 91 and from two hours to one hour.  Among a number of it. Well, so things change between July 2nd order and the 2025 order, the current order. Has anything changed between the current order and the preliminary injunction litigation that's ongoing right now in the district court? Your Honor, I'm not aware of any material changes. Of course, we're complying with the court's current injunction, which means calling heat alerts at 88 degrees and checking the heat index every 30 minutes. We're complying with that. I think that's probably the only thing that has changed since the court's current injunction order. But materially, all of those big changes we talked about in the brief, the shade pavilions, the shade wagons, the changes to our medications list, all of those things and the changes to the policies occurred after August. The court gave us, the district court gave us instructions in August of 2024. We implemented those instructions. And so that's where all the material changes happened after that. And just to complete my answer, sorry, Judge Shura, if I just have one sentence to complete my answer to Judge Wilson on what would happen if the district court does enter a successive injunction. I mean, we would notice our appeal. We would move to consolidate that appeal with this case. And then we'd respectfully ask for a supplemental briefing and re-argument in this case to take account for that order ordering a successive injunction. If the injunction is entered in the district court, a new injunction is entered, does that revive this order? Or does this order go by the wayside and we're then looking at the operative third order? Or is that for us to figure out when it gets here? I think that's for re-argument, Judge Wilson, if necessary. I do think under the plain terms of the PLRA, obviously our view is that you can't enter a successive injunction to try to keep the same injunctive relief alive. And so our view would be that this order would terminate, that it would be dead. All right, take it, go ahead. On Roboto, would you please address, you started off talking about this, about particularized findings. Yes. Address the Gates case because it says that particularized findings are not required in 3626A.  Judge, you are happy to address now or address on Roboto? Thank you. You, you. He's got his answer rolling off his lips. So go right, go ahead. I don't want you to choke on it. I'll keep it at 30 seconds, Judge Stewart. I'm sorry. We're here, we're not in a hurry, we have lunch. Judge Clement, I think the way to read footnote 8 in Gates is to think about the exact argument that Gates was rejecting. It was rejecting the position of the 11th Circuit today, which is that 3626A requires particularized sentence by sentence, paragraph by paragraph findings in an injunction order. That's, I think, the argument that Gates was rejecting. Gates was not rejecting the argument that, well, the district court violates 3626A if it makes no findings whatsoever. There's literally nothing on the paper about 3626A. It was not addressing that. And so that's why I think Hines County can be distinguished from Gates footnote 8, and this case can likewise be distinguished. Thank you, Judge Stewart. When you come back on rebuttal, think about this thought. What is excessive? There are ample cases, I can think in prison situations, I can think in desegregation context, I can think of hospital context, I can think a lot of these where there's seriatim actions in the court. But court cranks up, new hearing, new proceedings, what's happened since July to now. I mean, it's all good stuff. At the end of that, it's the same statute. Court is ruling based on, quote, a new record, so to speak. You know, if there's more experts or whatever. And so here's an injunction. OK, you'll come in and say, well, that's excessive. The other side will say, no, that's not excessive. That's not built on the fact record that July 2nd. It's a new injunction based on the changed circumstances in between, the policies and procedures that the state agreed to do, et cetera, et cetera. We're asking you for relief based on that. BLR says that's not excessive. You get my point? I do. So I'm not talking about a gamesmanship thing. I'm saying I can think of examples. Hospitals, definitely in some desegregation context, and where you had, contextually, maybe, quote, same thing. But stuff had happened on the ground. So court cranks up a new hearing, y'all are there, maybe there's another expert, I don't know. But it's basically there. You would say, well, that's excessive. The other side would say, well, it's not, if it's on the fact. You see what I mean? So that's just rolling in my head when you went to the successive. I'm not trying to trick you at all, but just the thought of what it is. But there will be a chance on your main argument, just some thought. I'm not saying that this court will do it. The first thing I thought about, OK, what is excessive? Unless he just says, OK, strike out and put a new date. We know that is, right? But I'm saying, if you all look back down and you're calling witnesses, what are the circumstances with 88 degrees? Did anyone get sick, injured? You see what I mean? Were you taking facts, and so on and so forth? And then at the end of that, there's relief from the PLOA. But the court says, this is based on what happened between July 2 and August, or whatever, based on these tests. I don't know that that's happened. I just want your take on what on the PLOA constitutes excessive, so to why you're moving it, OK? Yes, Judge, we're happy to. Appreciate your patience. All right. All right, Ms. Stapleton. Thank you, Your Honor. And may it please the court, Anna Stapleton of Paul Weiss on behalf of Voice of the Experienced and the individual plaintiffs here. I'm joined at council table by Samantha Cuscio of the Promise of Justice Initiative. This court has previously acknowledged that exposure to extreme heat on LSP's farm line likely poses a substantial risk of serious harm. Appellants cannot contest that they are well aware of that risk, yet the heat protective policies implemented since the outside of this litigation are inadequate to protect the health and lives of men required to labor on the farm line. The district court crafted narrow relief that is specifically targeting the Eighth Amendment violations identified. First, that the state's new policy does not mandate protective measures until the heat index reaches 91 degrees Fahrenheit, rather than the scientifically established threshold of 88 degrees. And second, that the policy fails to require officials to monitor the heat index with sufficient frequency to ensure that heat protections are promptly implemented when that threshold is crossed. All right, first questions. Do you agree that we have jurisdiction to hear this? And in fact, it's a preliminary injunction, not a TRO. Yes, Your Honor. At this stage, we do agree. And you agree that it's mooted on August 21st? It will be mooted, Your Honor, unless the district court grants our motion to renew the injunction. And again, if that happens, we're sort of back to square one, new appeal, new discussion. Your Honor, if that happens, our understanding is that it would effectively extend this court's jurisdiction, because it is a renewal of the same injunction. Well, I mean, if it is, and if it's not. But either way, we've got that. I'll call it a new appeal. Whatever it is, it is. But it doesn't necessarily revivify the TRO that expires by its terms. It would be a new order that we were reviewing. Your Honor, it would be a new order. However, I think the Ninth Circuit provides an example of this in the Mayweather case. The Ninth Circuit's approach has been that if the order is renewed, then it keeps the appeal alive and enables the Court of Appeals to rule on the merits. I would point out also that this court's decision in Smith v. Edwards contemplates that that is possible. Judge Wilson, you, of course, wrote the opinion. But the issue there, which was litigated in this case back in April, was whether the district court's order should be vacated. And in determining that it should be vacated, the court contemplated that if the plaintiffs in that case wanted the appeal to be kept alive, they could have sought an extension of the underlying injunction. Well, that's an extension of the actual TRO. Is that what you're seeking in district court? Or are you seeking a new order? We're seeking a renewal of the current order. And again, under Mayweather, we believe that's sufficient to keep this appeal alive. Well, what do you do with counsel's argument, which is somewhat potent to me? As I said, that TRIO statute, ARERA, HEDPA, PLRA, they weren't made out of whole cloth. I mean, they have a whole lot of things in them that other statutes don't have because they had particular things in mind. And so whereas there probably are some other contexts where there are injunctions, you get extensions, et cetera. But counsel's point is that PLRA is one of those statutes that down the line, law expressly prohibits success or whatever. There may be other statutes, not PLRA, not ARERA, not HEDPA. Well, maybe that's true. But because of the terms of the statute and so forth, he's saying you can't migrate over other jurisprudence that might allow that. You've got to look strictly at PLRA, the language, et cetera, et cetera, unless you cite a PLRA case. That expressly allows it, that's the way I understand it. All right. You've got to be going with PLRA to say that even a successive or whatever, or extending the injunction, is even possible. So what do you say? Yes, Your Honor. So the Nantucket case, Mayweather, is a PLRA case. I don't see anything explicit in the text of the PLRA that would forbid successive or renewed injunctions. Certainly this case, excuse me, this court has dealt with cases where there have been multiple injunctions issued. Gates is one of them. And I'm not aware of any cases. Let me ask you a housekeeping question. Are you all the same lawyers in the case before Judge Oldham, Powell, any other cases? Or are there different sets of lawyers? I argued the case before Judge Oldham. I was different counsel for the state. OK. OK, all right. Gotcha. Forgive me, yes. So I'm not aware of any case law in this circuit that would interpret the PLRA specifically to prohibit successive or renewed injunctions. Let me ask you a practical question. When Angola was working up the protections, the new protections, was the consideration given as to what time of day this work was done? Your Honor, I'm not aware of anything in the record that would reflect that particular consideration. I know that, generally speaking, men go out in the morning. There is a provision in HCP8 that when heat alerts are called, there will be potential adjustment of work schedules. But beyond that, I don't know that there was a particular discussion of that question. If I may, I think it's worth spending some time on the merits of this case. Certainly, as the opposing counsel has pointed out, it's possible for this court to rule on NNI alone. However, that would be somewhat unusual. As the court did in Hines County, the more ordinary course is to conclude that an Eighth Amendment violation occurred, and then to subsequently ask whether the PLRA requirements for relief are met. And here, it is our contention that the record plainly supports both the presence of the objective risk and the deliberate indifference to that risk. On deliberate indifference, I would point out, not only does the new HCP8 and new LFP policy raise the threshold at which heat alerts are called, making heat alerts less protective, but it does so in the complete absence of evidence supporting the idea that 91 degrees is sufficiently protective. All of the evidence heard by the district court and found credible by the district court was that 88 degrees is the point at which the risk of heat-related injuries and potential death becomes constitutionally unacceptable. But the district court didn't make that finding, though, not in the July 2nd order. In the...forgive me, in the July 2nd order...  Oh, the 2024 order, the district court did conclude, based on the evidence from Dr Lovallo, that was... The district court noted the issue, but the district court made no requirement for the state to stay at 88 degrees. Oh, I apologise, Your Honour. I meant to make a different point, which was that in this order, the district court very clearly made the finding that 88 degrees... Well, right, but I guess... ..was travelling under the record, and it was obviously developed once the state raised it three degrees from 88 to 91, but the district court, before the 2025 order, had not found any temperature threshold for issuing heat alerts. It was all about shade and water and sunscreen and other things like that once a heat alert is called, correct? That's right, Your Honour. So the evidence put forward from Dr Lovallo in the 2024 injunctive proceedings was about what protections were necessary, but did explain, as the district court reviewed in its order here, that 88 degrees was sort of the relevant threshold. In the proceedings for this injunction, Dr Lovallo reiterates that explanation, both in her declaration, which was attached to her motion, and in her testimony at trial, that 88 degrees is the point at which protective measures need to be implemented, and I would add that she specifically highlighted that at that point, men who are heat-sensitive, who have heat-precaution-duty status, need to be brought inside. That is... So, true or not, somewhere along the way, I read that the state is allowing breaks, shade, water, using all that, even when a heat alert's not called. A 15-minute break's every 45 minutes. Is that accurate? There's testimony to that fact, yes, Your Honour. No, I mean, are they doing it? I'm asking you. Your Honour, that's not something that's been litigated, but it is something that we expect to contest. You contest that they're doing it in the absence of heat alerts? Yes, Your Honour. To be clear, there's not clear record evidence. I mean, that would ameliorate any rise in when the heat alert is issued, correct? If they're already doing a lot of what is required when a heat alert occurs. Your Honour, the relevant question, for purposes of the Eighth Amendment, is whether there is permanent protection in place. But I'm asking, is there? In the absence of a heat alert, are they doing it? That would ameliorate their decision to raise the level three degrees, would it not? Well, relevant to the Eighth Amendment analysis, voluntary action would not be sufficient to remedy the harm. So they would need to embody it in an official policy and basically state that they're doing it. And maybe they are, maybe they aren't. I'm just asking, because somewhere along the way, I got the representation they were doing that. Yes, Your Honour, they do make that representation, and I think it's extensively covered in their briefing on this appeal. But our point is... When did they start doing that voluntary action? Their assertion, I believe their testimony is that, and it's Mr. Sylvester's testimony, is that that began earlier this year. I would have to consult the record. Well, I mean, if that's not developed, doesn't it undermine your position here that it's very clear that what they did was deliberate indifference? It doesn't, Your Honour, because what they failed to do was, as Your Honour pointed out, encapsulate that in policy. And the Supreme Court is very clear in Farmer v. Brennan. This court reiterated in Gates v. Cook, and in fact, the motions panel that issued the partial stay of the 2024 appeal, excuse me, the 2024 injunction, pointed out that litigation-driven voluntary behavior is not sufficient. Right, so I think the relevant question is when they were making these policy changes, when they moved the heat alert to be less protective and not be called into 91 degrees, why did they not place into policy that they would otherwise provide these protective measures regardless of the heat alert, right? Instead, what they're doing is voluntary action, and that's not sufficient to ensure that protections will remain in place once litigation has come to a close. Well, so with regard to the two hours to 30 minutes, broader question, what does the district court... The district court doesn't cite the PLRA. The district court doesn't make the required findings under the PLRA. I apprehend your position to be that we can infer it based on what's in the order and substance. Yes, Your Honour. But doesn't Hines County, don't other cases, doesn't the statute itself require not magic words, but particularized findings with regard to those parameters? And they're not there. No, Your Honour. So to begin with the statute, this case has a preliminary injunction, is governed by A2. A2, the text says, preliminary injunctive relief must be narrowly drawn, extend no further than necessary, and be the least intrusive means necessary to correct that harm. Nothing in that sentence requires particular findings of those three things, and that is a distinction between A2 and A1. Second to your question regarding Hines County, But are we allowed to just imply that that's what the district court found? I mean, how do we evaluate that? Your Honour, the court must evaluate whether the injunctive relief, the preliminary relief provided is those things. And we think it's clear from the face of this order that it is. First of all, with respect to necessity, the district court makes a clear finding that 88 degrees is the relevant threshold, as supported by Dr. Pesallo's testimony and the relevant science. He clearly recognizes the need to comply with the narrowness requirement, because the district court order references the partial stay of the 2024 injunction, which was because that injunction was found to be overbroad. And then- But it was overbroad there because it applied to the entire state penal system. That's right. That's right, Your Honour. So at ROA 10206, the district court says specifically that this relief applies only to LSP's farm line. But that doesn't mean just because the district court applied it only to the farm line that it's therefore narrow in terms of the way it's drawn. Your Honour, in this instance it does. The plaintiffs here are specifically challenging conditions on the farm line. The factual findings that were made are all specific to the health and safety of men labouring on the farm line. And so drawing relief that applies specifically to the farm line, in our view, is plainly sufficiently narrow for purposes of the PLRA. Well, I don't... I'll credit your argument, but with regard then more specifically to the 30-minute interval, the district court does nothing to evaluate the state's one-hour interval versus two hours. So how is that not flawed right there? Your Honour, the 30-minute interval is what the district court concluded was supported by the record as necessary. But what the state was doing was one-hour interval, and the district court didn't evaluate that. How is that consistent with narrow and necessary and least intrusive relief under the PLRA? I mean, the district court didn't even evaluate what the state was actually doing. Your Honour, the district court evaluated the record evidence of how quickly the heat ended up... But it goes back to two hours. It does, Your Honour, and as a descriptive point, of course, we recognize that the relevant policy is the LSD-specific policy that requires monitoring every one hour. As a descriptive matter, I think the district court's confusion on that point arose from the fact that at the point that we filed our motion, that new LSD policy... But the district court didn't seem confused. It referenced the one-hour limitations, and it just didn't evaluate it based on the standards of the PLRA. So how is that not reversible? Your Honour, two points, if I may. First, again, the question is whether the relief granted is necessary to ameliorate the Eighth Amendment violation. And there's clear record evidence that 30 minutes is what's required. The state was aware of National Weather Service data showing that the heat index could spring rapidly in periods of less than an hour, and that to protect against the harm that Dr. Fasalo testified would occur when men are exposed to heat indices above 88 degrees for extended periods of time, that monitoring the heat index every 30 minutes was necessary. My second point is that to the extent the court is not persuaded by those arguments, it would be possible to vacate only the 30-minute requirement and to leave in place the heat alert threshold at 88 degrees on the ground that the 30-minute requirement does not meet the PLRA standard, and then also to remand with directions to the district court to further consider the PLRA's requirements with respect to... But doesn't this just show what's lacking from the district court's order, which is the findings necessary by the PLRA? Is it narrow? Is it necessary? Is it least intrusive? And the district court didn't even start with the right baseline, two hours versus one hour. Your Honor, again, I disagree about the relevant baseline, because the relevant baseline, once we've established an Eighth Amendment violation, now we're talking about what is narrow, necessary, and minimally intrusive, is what is required, right? It's that necessity finding. What is required to ameliorate the Eighth Amendment violation? Does the failure to evaluate the one-hour interval undermine deliberate indifference and that sort of thing? So does it go back to the Eighth Amendment claim? No, Your Honor. Again, the Eighth Amendment claim is about... Or, excuse me, the Eighth Amendment violation is about whether the policies are adequately protected, and with respect to deliberate indifference, it is clear that the state was aware of data showing that the temperature outside could become... Or, excuse me, the heat index could become dangerous to men on the farm line in well under an hour. It's also relevant, Your Honor, to the relief that's mandated under HCPA, which is that after 45 minutes of heat indices above the threshold, men on the farm line are entitled to a 15-minute break. It's difficult to provide a break after 45 minutes if you don't realize for close to an hour that the heat alert threshold has been exceeded. How many men are we talking about that are working at the same time, that we need the water, that we need the shade? At any given time, Your Honor, my understanding is that it varies, but my understanding is that it's dozens of men who are out on any given day. At the same time. I believe that's correct, yes. The court has no further questions. I think I'm happy to rest on our brief, and we would ask... So what's the on-the-ground situation real-time now? I take it, hopefully, there have been no casualties. This is August the 4th, so we're in the dead of the summer. It's hot, et cetera. I think we asked counsel opposite. The situation on the ground, so is it your understanding that the state is complying, if you will, or the interval? So give me the cliff note. Exactly what's going on on August the 4th on the farm line? Yes, Your Honor. So the injunction is, of course, in place. To the best of our knowledge, the state is complying with that injunction. So when they are monitoring the heat index every 30 minutes, when the heat index crosses the threshold of 88 degrees, then the protective measures are put into place. Men with heat precaution duty status are brought inside, and a break is given every 45 minutes. A 15-minute break is given every 45 minutes. That is, I say, of course, to the best of our knowledge. And my understanding is that there will be continued litigation as to some of the other facts, the provision of the shade pavilions, whether, to your question, Judge Wilson, the protective measures are being provided outside of the column of the heat alert. OK, you heard the questions were asked earlier about the target August 21st potential movement is the other opinion. So we're trying to avoid having all these overlapping opinions that maybe don't control. But I mean, it's the same universe. You follow what I'm saying? And so it gets procedurally confusing from going to motion panels and so forth. And you've got all these things going, and y'all are at the district court, and we're talking to the same people, same place, same circumstances. And it makes it extremely difficult to get our arms around what's exactly going. The state, of course, objects to having to do it, and urges stringency that the PLRA has its limits, and so on and so forth. Yet we're told that, whether they agree with it or not, they are on the ground complying with the injunction, I guess is the better way to say it. But we do have a potentially imminent date in which the injunction could end on its own, and there's really nothing for us to need to do. It'd be good on its own right, right? Yes, Your Honor. So it will become moot unless the district court acts on our motion to renew. Excuse me. Well, the district court knows that this case is on appeal to us, right? Yes, Your Honor. And it knows the other actions. So is there some reason to think that the district court is going to act on anything, knowing that you all are up here arguing today to us about, I mean, come on. You know, we're not on Mars. You know, you're here. You're arguing. The district court is aware. Many district courts, I'm speaking for this one, knowing that something's on appeal at the Fifth Circuit, I mean, what's my motivation to go get myself further in the soup until I know what the Fifth Circuit is going to say, et cetera, et cetera. On the other hand, the Fifth Circuit is not willing to dive into the soup. If something's happening at the district court, then we don't have to get ourselves involved, if you get my point. And so having several different cases, one before Judge Oldham, this one potentially coming up, all involving the same facts on the ground, same circumstances, et cetera, yet different temporally and so forth, we want to get it right. But we want to get it right based on the uncontested facts or the known facts and in compliance with PLRA and an eighth amendment. And so what we don't want is a moving target. Maybe I should put it that way. Yes, Your Honor. We don't want a moving target so that we erroneously, otherwise, rule and this thing is malleable. And that's the part I found, I won't say confusing, but a little perplexing. It's teed up as an expedited appeal. We have it on first today. We've expedited his position here on the panel, et cetera. Whether that augurs that the next 30 minutes, we should go back and come out with some pronouncement, that's a dubious proposition, if you get my point, based on what we hear. On the other hand, if we lay on the back and wait on August the 21st. Your Honor, I certainly understand the concern and the sort of procedural thicket we find ourselves in here. If I may, one possibility, or one important point, is that while this order may become moved on the 21st, it may not. And I think this court has an opportunity to provide guidance on this issue while the district court essentially maintains the status quo by renewing the injunction. And again, under at least Ninth Circuit precedent, that is clearly permissible and would clearly maintain this court's jurisdiction to decide the merits of this appeal. And the other point I would offer is that there are essentially two ways that this litigation can come to a final conclusion. One is, of course, the state could choose to implement policies that fully remedy the ongoing Eighth Amendment violation. The second is that the district court could come to a bench trial on our full complaint, our full request for relief, issue, or not issue, a permanent injunction. That would eventually go up on appeal, and then the case would be decided. There's not yet been an opportunity for that to happen. There was a bench trial that was scheduled for last fall. It's been delayed several times. I don't mean to speculate why, but possibly because of the pendency of these appeals. And our motivation throughout has been to ensure that the men required to labor on the farm line are protected during periods of time. Well, protected as you've defined it. I mean, what I hear you say is they can capitulate. Just do everything you want them to do. Or we've got to litigate in the district court, and maybe it'll come to a point. But we've got this order right here, right now, to deal with. And that's just the reality. That's right, Your Honor. And I would say, respectfully, it's not our position. It's the Eighth Amendment, and this court's case law, of course, enforcing the Eighth Amendment. But no, this court has an opportunity to, I think, decide this appeal. With the resolution of this appeal, and I understand that we can now happily anticipate a return trip should the district court renew this injunction. This winter may provide, hopefully, an opportunity for all of these appeals to have been resolved, and then for the district court to move on to a bench trial on the full merits of our case. All right. All right. Thank you for your argument. Thank you, Your Honor. And responses. We'll adjourn. Counsel, you have rebuttal. Thank you, Judge Stewart. Just a few brief points on rebuttal. First, let me start very quickly with the factual point. I think I heard my friend say, take both sides of the position about whether we provide breaks, and water, and ice as a matter of policy. As we say on reply brief page four, and we're citing the sworn declaration there, all of that is done as a matter of course. There is no dispute, and plaintiffs, to my knowledge, never argued in the district court that somehow we don't provide breaks every 45 minutes, and ice, and water, all those things. That's undisputed in the factual record. And so I want to be extremely clear that this case does not involve that question of whether we're going to give water to a prisoner working on the farm line. A few other points about process. On the PLRA, I did not hear my friend address Hines County squarely controls here. Judge Clement, I think given the history there between the two orders that this court was considering from the district court, you're hearing the same arguments again, just different parties. And so I think that squarely controls. That's all you need to do to issue a quick opinion. Judge Stewart, on the timing, this court's decision in Smith versus Edwards suggested that a party like us could move to expedite the appeal and try to complete the appellate process within the 90-day time period. That's what we're trying to do in this case, and that's why the appeal was expedited. And we appreciate the court expediting the appeal for that purpose. On the question of what's going to happen in the district court potentially following August 21st, Judge Wilson, I want to be clear. I think this court in Smith versus Edwards, when it said that plaintiffs could extend the injunction, the court didn't explain what it meant by that term. But the PLRA, and Judge Oldham said this in the first argument, the PLRA explains how a plaintiff can, quote, extend. It doesn't use that word, but can extend an injunction. And Judge Stewart, this is going to go to your successive question. The 11th Circuit has opinion, and I commend to the court our opening brief in vote one, which addresses this successive injunction question. We give you all the competing case law. There is a circuit split on the question. The DC Circuit and the 11th Circuit say that if you read 3626A according to its plain text, what it says is injunctive relief will expire after 90 days unless the district court makes the 3626A findings again and makes that order final. The question here, and this is what the 11th Circuit went into very deeply, is what does it mean to make an order final? What the DC Circuit, what the 11th Circuit said, and what Judge Oldham said quite practically at oral argument in vote one is final means a permanent injunction. The way you can extend preliminary relief is by entering a permanent injunction. Now, notably, the plaintiffs in this case have not sought any permanent relief in their pending motion below. They've only asked for a second preliminary injunction. And like Judge Oldham said, by definition, a preliminary injunction is not final. It's preliminary. And so that's why this successive question arises in this context. And that's why if the court eventually addresses the issue, you don't have to address it on the facts of this appeal. But if the court eventually sees the issue, that's why you should follow the DC Circuit and the 11th Circuit on that question. My friend mentioned the 9th Circuit. The 9th Circuit has never expressly analyzed and told anybody what the word final in 3626A means. And that's why I think the 11th Circuit has the right side of this issue. So Judge Stewart, your question about what would happen if you had a successive request from plaintiffs where in between two orders, the parties went back to the drawing board. There was new testimony. There was a new hearing. That's not this case. If you look at the motion that's pending right now in the district court from the plaintiffs, they've said just do it all over again. There's no new evidence, no new arguments. It's all the same. They're requesting the exact same relief. And so nothing like that has happened. If in a future case, there was a question about whether intervening circumstances had changed the facts on the ground, and so there was a question about whether requested injunctive relief was truly a renewal or an extension or whatever term you want to use, I think in that case, you've returned to the text of 3626A, which says preliminary injunctive relief expires unless these conditions are met. I think the noun there, the noun phrase there is preliminary injunctive relief. And so you would ask, is the injunctive relief that would come in a second time the same Well, that didn't happen here effectively. We had the 2024 order. The state changed some things. And there was another hearing and another set of proceedings. And then you had the 2025 order. And I don't know that we need to get into arguing the next appeal that hasn't happened, that might happen, that could potentially happen at some stage. But that's just it. It's difficult to assume things when we don't even know what the district court may or may not say or do. Yeah, and that's why our bottom line contention is you don't look at it. Just focus on the facts and the briefs. In this case, decide the case hopefully in a timely manner that will allow the parties to receive guidance before the August 21 date. Judge Wilson, we did preserve this argument in opposition to the original motion for injunction that they filed this year. Because the relief that the district court ultimately granted, if it is on appeal to you, is different by the district court's own terms from the relief that he originally granted in July of 2024. That's why we haven't pressed this successive injunction argument on appeal and disappeal. But I'm telling you that if a third appeal arises where the district court grants the same injunction all over again that you're currently reviewing, we will press that argument before you. And if in one sentence, I read all your stuff. In one sentence, because you're hearing heavily about PLRO, PLRA, NARES, et cetera, so stripped apart from all the rest, if we were to be persuaded, and I'm not saying we are, if we were to be persuaded by this very textual argument, findings aren't specific, it don't comply with PLRA, whatever, assuming we took your argument at face value and said, OK, that's true, that could be a real short opinion. Right? That's correct, Judge Stewart. So if that were to occur, what would the import be on the on-the-ground circumstances? Well, with the, I want to clarify. You would eviscerate what otherwise is going to become moot on August 21, right? That's correct, Your Honor. I think it's important to the state that this court issue a ruling saying that, because as you know from the docket, we're a frequent flyer here, and we face these sorts of injunctions all the time. And apparently, this court hasn't been clear enough on what the PLRA requires district courts on similar circumstances to do before entering injunctive relief. And so the main thrust of this appeal is we need a ruling from this court laying down the markers that a district court must follow before entering injunctive relief. Well, I can promise you we're not in the business of trying to make lawyers happy in terms of what we say. And I can promise you, without even talking to two on the other side of me, we're well-heeled and only ruling on what we have to, and the narrowness of what's before us. Notwithstanding, what are the thoughts B-Way B may make your life easier, but that's not in the commission. Absolutely. So I'm not trying to be facetious, but I'm really trying to be plain to say, we look for what is the narrowest way that we can resolve the situation. We grant our argument on purpose to be able to ask these questions, and we're viewing in about this potential newness, these others. Not because we're trying to duck the big ticket Eighth Amendment that they're raising, but we're trying to look at what's here and address what's before us. And I just said, OK, if we took your argument, someone in the brief says, all you need to do is X. The brief says that, right? And so I'm just taking that out, OK, assuming we did that, all we would be saying is that, based on that, boom, you didn't say enough. End of story. But on the ground, it would not alter the circumstances, would it? If you all are doing as a matter of course, the breaks, the shade, et cetera, et cetera, you're not telling me you would stop doing that, are you? No, Your Honor, that's our policy. And I will say one way in which this court's ruling, and we've said all along, I think the narrowest ground is the PLRA ground. I think that's the easiest, especially in light of Hounds County, you don't have to say a whole lot to say that decides this case and then get out of the case. One tangible way in which that will affect us on the ground is that the district court, of course, is considering a request for another injunction. And so one of our arguments is going to be that if you're going to enter that injunction, you've got to be able to articulate what your PLRA findings are. This court's statement on that will directly impact the proceedings below. And so that's, of course, in addition to all the other arguments we have about why that injunction would be inappropriate. But, Your Honor, I think it's very, very important, especially after Hinds County, to reiterate that failures like you see in the district court order below are inexcusable. I mean, we're 30 years after the PLRA was passed. OK, well, I got you on that one. My last question is, the matter before Judge Oldham's panel has been pending, how long? It's been pending a few months, Your Honor. Well, we filed the notice of appeal last summer. Oral argument was heard earlier this year. It's been pending there. We don't have the tea leaves, Your Honor. I understand you don't. I'm just here, you know, in the chair. You know, but I've been here 32 years. I know how these things operate. And so I'm saying, you're here on an expedited appeal. We got it today. You've got another case, not related but related, that's been submitted for a while that's there. We should not know it's there, but we know it's there. And so that's why the three of us are trying to like, you know, get a grip on, you know, we don't want to be dealing with hypothets and so on and so forth. We take the seriousness of the claims being made. But at the same time, you know, we're trying to cue here of what's there. So my question in bed, and Adam will let you sit down, what is the holding the state is expecting, wanting from that panel? The only live issue in that appeal and the ruling that we've requested is vacature of the district court's July 2nd injunction. July 2nd injunction. That's correct. And the reason that this appeal is expedited, that one is not, is plaintiffs hammered us in the original appeal for not trying to expedite the appeal. Now, we told Judge Oldham's panel that we don't think that's our burden. But out of an abundance of caution, that's why we've exercised every tool in our toolbox in this appeal to try to make the appeal go as quickly as possible. In light of Smith's example. Does it have the same issues, the 88 versus 91 and the 30 minutes versus an hour? Is that in the other opinion? It is not, Judge Clement. And the district court addressed this directly in its opinion below. It said this is the first time that it's addressing those issues. And to Judge Wilson's point, that was one of our complaints about it's faulting us for moving from the 88 degree threshold, was the district court made no finding that the Constitution required that last year. Well, why would I not think that Judge Oldham would write exponentially on the PLRA, the time strictures, and all of that, which you said in argument, boom, and then under our rules, we'd be following all that. And the guidance would be out there and so on and so forth. So color me quizzical that if it's King's X, as you say, if you've got the ace of spades and another one in your hand, and all that was presented strong as Ajax months and months and months ago, yet here we sit on August the 4th on an expedited appeal where those same legal principles were, I'm sure, eruditely argued by you and others on that panel. So color me at least quizzical that there's something else. So Judge Stewart, I will fall back on my friend's argument before that panel, which I think rightly told the panel is that this issue about successive injunctions, that's not a live issue in that case. And so there's no reason for that court to reach it. It's just vacature. That is the sole question in that appeal. Thank you so much for your time. I wouldn't ordinarily ask you to brief it, but since we gave your argument, your live faith for whatever questions we ask, particularly that's why I asked were you the lawyers in that other case arguing, not to give away things, but I mean, it's the same state, right, that's here and that's where we're interested. OK, on the ground, I mean, like what's really still going on factually and the policies and so on and so forth. I think we have your argument, and we appreciate both sides being candid with us and so forth. Thank you so much for your time. All right, thank you.